The last case to be argued today, which is 20-3170-CV Sarkes v. E.I. Dupoint de Nemours et al. Mr. Watkins? Thank you, your honor. I'm here today with my local counselor, John Lipsitz. May it please the court, I represent the plaintiff appellant, James Sarkes. Mr. Sarkes worked at the most studied industrial plant in America. This is a point that all parties agree on. The question posed by this appeal is whether the district court aired when it held inadmissible the opinions of the plaintiff's expert, even though her opinions were squarely based on, and went no further than, the conclusions and findings of government scientists who studied this plant and its excess risk of bladder cancer in its workers for 26 years. In a published, peer-reviewed epidemiological study, carry on 2014, this is the same study relied upon by the defendants. These scientists with NIOSH, this is the National members of the cohort, including Jim Sarkes, were at an excess risk of developing bladder cancer, provided that they were exposed to the carcinogen in question, and had been employed for more than 90 days. Plaintiff's expert, Dr. Christine Oliver, cited this specific conclusion in reaching her opinion on the cause of Jim Sarkes' bladder cancer. It is undisputed that Jim Sarkes was definitely exposed at the highest exposure ranks assigned by NIOSH for seven months in 1974. Yet, the district court found Dr. Oliver's causation opinion to be unreliable. In a toxic chemical exposure claim, New York's substantive law requires the plaintiff to put forward evidence of a scientific expression of the injurious exposure. This is the New York Court of Appeals decision in Parker v. Mobile Oil. Let me ask you this. With respect to Judge Sinatra's opinion, do we review this for abuse of discretion? You've got two standards for review. We contend that with respect to what I was just leading up to about the scientific expression of injurious exposure, this is a straight summary judgment issue where your honors look at the whole record de novo. With respect to his ruling that her opinions are inadmissible, then you look at that under the abuse of discretion. I think that on the issue of the injurious exposure, that has to be looked at as a straight summary judgment issue. Is there objective evidence in the record that the expert relied on quantitative data? If she did, then that's the appropriate foundation under Parker. I'm a little unclear on what you think the district court actually did here. I'm going to put two choices. If they're too limited, you'll tell me. I want to know, do you think the district court said your witness was not sufficiently reliable to have her opinion admitted under Daubert or that the substance of her testimony was not sufficiently probative to meet the state law Parker standard of reliability? On the latter, your honor, our expert relied on quantitative data that the district court claims she didn't. The magistrate judge also found that our expert relied on specific measurements that demonstrated the... I think I understand that. There's a dispute between you and the district court as to whether your witness adequately relied on quantitative data of exposure. What I'm trying to understand is, because it may affect the standard of review, does that issue, namely the quantification of exposure, go to her reliability for Daubert purposes? The latter, your honor, the latter. It's not making a Daubert ruling? It's on the quantification of the exposure is meeting the Parker requirement, which in our view is a straight summary judgment issue, not a Daubert issue. Okay. Parker framed the question as whether there is an appropriate foundation for the expert's opinions rather than whether the opinions are admissible. In Parker and in every New York appellate department case in court of appeals case decided since Parker on this issue, the issue has been the existence of objective evidence of injurious exposure. If such evidence existed in the record, the New York courts denied summary judgment. Dr. Oliver cited 1990 quantitative data provided by NIOSH on orthotoluidine exposure for the exact same assignments which Jim Sarkis had performed in 1974. She opined in her report and testified her deposition that the exposures that were measured in 1990 were lower than that experienced by Jim Sarkis in 1974. Her conclusion on this point is directly supported by the studies relied upon by the defendants. That's Hanley 2012 and carry on 2014. If I could just get to this one last point, your honor, the district court held, quote, Dr. Oliver provides only vague qualitative assessments based on Sarkis own descriptions, unquote, but the US magistrate judge who reviewed the same record reported to the district court that Dr. Oliver relied on, quote, measurements from latter years coupled with the inference of underestimation. I thank you. Thank you. Is it Mr. Glasgow who is arguing? Yes, your honor, may it please the court, my name is Joshua Glasgow. With me is Mr. Kloss who represents First Chemical Corporation. The district court appropriately exercised its discretion here to exclude the proposed testimony of Dr. Oliver because she did not offer a reliable opinion. The plaintiff was exposed to sufficient levels of OT to cause his illness. Now, in assessing whether Dr. Oliver provided a scientific expression of his exposure levels, the district court specifically said Dr. Oliver failed to provide, quote, a scientific expression using reliable methods of James Sarkis' exposure to OT for establishing causation. That's a Daubert ruling that is subject to the Abusive Discretion Standard Review, not a summary judgment ruling that would be subject to day and over. Do you think the judge was making a Daubert eligibility ruling and not a Parker substantive ruling? Is that it? Yes, so the substantive standard that the district court was applying is defined by state law under Parker and that's the requirement that an expert offer testimony that the plaintiff was supposed exposed to sufficient levels to cause the illness. The procedural aspect is controlled by federal law is the rule 702 standard. That opinion has to be a reliable opinion that satisfies the Daubert admissibility. Well, your adversary urges upon us that although the district judge said the quantification was inadequate, the magistrate pointed to specific studies that established a sufficient basis for quantification of exposure. What do you say about that? Sure, so in making that argument, plaintiffs are conflating two very distinct concepts and the first is intensity of exposure and the second is total exposure. I didn't get that. Could you say that again? I didn't follow that. Sure, the two distinct concepts are on the one hand intensity of exposure and on the second hand total exposure. So the district court quoted Dr. Oliver's statement that in order to calculate total exposure or dose, you need to take into consideration duration, frequency, and intensity. And it quoted Dr. Oliver's statement in her report that the real question in this case is whether duration is sufficient given that the court did the Goodyear plan for at least seven months. Dr. Oliver specifically conceded that she had no information about whether short-term high-intensity exposure was sufficient to have a toxic effect comparable to longer-term exposures. Now the Hanley-Carrion studies, by calculating unitings, they provide mathematical modeling that allows a scientific expression of exposure. But the quantitative numbers that plaintiff has urged in support of Dr. Oliver's opinion relate only to intensity of exposure. She never combines intensity of exposure with duration to calculate total dose. What do you understand that magistrate judge cited in the record? So the magistrate judge cited to a number of figures that relate to measurements from the magistrate judge's report also seemed to misunderstand some of the Hanley-Carrion data. So it stated that one of the figures in the Hanley-Carrion data was statistically insignificant when in fact all of the data applicable to the plaintiff in this case that take into account the unit day modeling are statistically insignificant. There were five different models proposed. Not one of them reached the statistically significant. So are you saying what's missing is evidence of the duration of exposure? No, what's missing is combining intensity and duration into a scientific expression of plaintiff's total dose. Well, when you say what's missing is combining, let's take them one at a time, did she produce evidence of duration of exposure? So there's no dispute that he was employed for under Hanley-Carrion for 3, 5, and 10 for the three different positions. So there was some duration. So what's missing in your view is intensity of exposure? So what I'm saying is that in order to make a specific comparison between plaintiffs and the subjects in the published literature, one of the ways that Parker identifies for doing that is to how their total exposure compares to these individuals in those studies. Dr. Oliver never does that. She says his intensity of exposure was higher. She acknowledges that his duration of exposure is lower, but that never brings it together to make a scientific expression, a reasoned apples-to-apples comparison. And one point I do want to make, it's an issue that was raised in the reply brief and the plaintiff's counsel that we sit now. Didn't she give an opinion that she thought the intensity for the duration she was aware of was sufficient to establish causation? So she does not make a comparison to the scientific literature. Instead, she says his intensity was high, his duration was short, and she acknowledges, I have no information about whether short-term, high-level exposure has a toxic effect. That's necessary under Parker. Let me ask you this. Is this a summary judgment? Would you agree this is a summary judgment ruling that we reviewed de novo? No. The district court took the proper two steps. This court's laid out also in the joint asbestos litigation decision. When you're assessing a Rule 702 admissibility decision, as well as a summary judgment ruling, the first step is to define the summary judgment record by determining what evidence is admissible. The second step, which becomes academic if the evidence is excluded, is whether that defined summary judgment record is sufficient to support a plaintiff's claim. The district court here held that Dr. Oliver's opinion was not admissible, and therefore, there's no summary judgment analysis to follow. Plaintiffs conceded below that without Dr. Oliver's opinion testimony summary judgment. I understood you in answer to my question to say that she didn't have the combination of intensity and duration, and for that reason, didn't satisfy the Parker standard. Isn't that what you told me? So for that reason, she did not provide a reliable opinion that was admissible to meet the Parker standard. Wait a minute. You got reliability in there as sort of the very tag end of your answer. When you talked to me, you said she didn't meet the Parker substantive standard because she failed to connect intensity with duration. That was a substantive argument you made. Sure. I apologize for misspeaking. This reflects the opinions. No, I'm not so sure you misspoke. It seems to me that's precisely what you meant to tell me. No, no, it's quite clear. The district court's opinion is unambiguous that Dr. Oliver failed to provide a scientific expression using reliable methods. The district court also said the court does not find reliable Dr. Oliver's methods, the leader of the conclusion that Mr. Sarkis was exposed to. So are you saying both? Are you saying that when their expert can't combine, as you put it, intensity with exposure, she is both showing that she is not sufficiently reliable to surmount Daubert and failing the Parker substantive standard. That it's both? Well, Parker is doing double duty a bit here. So certainly the rule 702 standard applies. As the district court noted in footnote four, which I think dispels any argument that he was The state cases are also informative to the extent they deal with reliability. And Parker, Cornell, Sean are some of those New York state cases. Although they're applying the Frye test, which is distinct from the rule 702 standard, they nevertheless assess reliability. And the district court made this point that in looking at how an expert can reliably meet that standard, those cases are informative. Because of the fact that when expert evidence is excluded is an admissible summary judgment necessarily follows in so many cases. You know, it's easy to slip into this language of inadequate or insufficient. The district court made a couple of these straight comments, certainly, as they also appear in some of the other cases. But it's important to note that the district court squarely held this opinion was unreliable and therefore admissible. That's a rule 702 ruling and that's subject to abuse of discretion. And are you saying it's unreliable for lack of data combining exposure with intensity? Yeah, so that makes it unreliable. The key points that the district court focused on was Dr. Oliver contradicts herself. She says, on the one hand, I have no information about whether short duration, high intensity exposure is sufficient. But that's precisely the opinion she's attempting to render. Well, that doesn't make her unreliable. In fact, that makes her remarkably candid. It may be that the lack of that connection doesn't meet the Parker standard, but what's it got to do with whether she's reliable? Sure. So in order for an expert to reliably apply a methodology, she has to be consistent. No scientist is attempting to say I have no information about whether that's true, but my opinion is also that it's true. That's an unreliable methodology. There are several other key categories where Dr. Oliver demonstrated that her methodology is unreliable. She cherry picks data, so she cites two evidence that supports her opinion. She ignores evidence that does not support her opinion without any reason, scientific basis. Well, now wait a minute. You mean to say an expert who comes in the court and, as you say, cherry picks the favorable statistic and doesn't dwell on the unfavorable is unreliable? Is that your point? That's a test of reliability? Cherry picking? The case law is quite clear that an expert varies from the scientific method when they ignore epidemiological data that's relevant to the proposed opinion and when they do so without a reasoned scientific basis. So certainly, Dr. Oliver could have said there are these statistics, they don't support my view, but here's why I don't agree with them, providing some explanation. A proposed expert can't rely on Dipsy-Dixon. In this case, there are some very clear examples where there's simply no plausible basis for her actions. The most obvious one is that the there's no question here that the second category is applicable to Mr. Sarkis, and instead of citing that data, she cites to the higher data that is inapplicable to Mr. Sarkis, and that's inconsistent with the scientific method. No person attempting to dispassionately determine causation would engage in that sort of analysis. Let me ask you this. Why don't we that Dr. Oliver's opinion was unreliable and admissible? So because Dr. Oliver's opinion is out, there's no summary judgment record to review. Plaintiff conceded below that without Dr. Oliver's opinion testimony, summary judgment would necessarily fall. So in order to get to the summary judgment question, you would first have to converse the district court under the admissibility rule. And then you argue, I take it, that we review his admissibility determination for abuse of discretion? Yes, only with manifest error records. It's a rule 702 admissibility subject to reversal. If I could just at one point that was raised in the reply brief that we didn't get to address, there's an argument in the reply brief at page 20 that Dr. Oliver opined that 292 unit days was sufficient to cause bladder cancer. And Dr. Oliver did not so testify. So Dr. Oliver referenced this 292 unit day measurement, which is at the bottom end of the range of observed cases. But she said in her deposition that she was not claiming that single case was caused by exposure to OTE. She acknowledged that she had no information whatsoever about that whether it was a smoker, whether he had other risk factors. So Dr. Oliver certainly did not testify that 292 unit days was sufficient to cause bladder cancer or produce bladder cancer, is the precise quote from the reply brief. Fine, thank you. Council, Mr. Sarkees has reserved three minutes. Thank you, your honor. I'd like to make two points. First of all, Dr. Oliver relies here on a published peer-reviewed study. That's carry on 2014. Carry on 2014 says that all the workers in the cohort were at excess risk of developing bladder cancer, provided that they were exposed. And then carry on 2014 defines exposure as more than 90 days of employment. Clearly, Jim Sarkees was a member of the cohort, and he had more than 90 days of employment. So she relies squarely on a published peer-reviewed study, which is the epitome of what Second of all, there was a question, I believe it was Judge Newman, that the district court said that her quantification of his exposure was inadequate. I beg to differ with your honor. The district court said that there was no quantification. Not that it was inadequate, that there was none at all. And that was entirely wrong. Because what Dr. Oliver did is that she went back through the NIOSH records, found records of exposure to the exact same jobs that Jim Sarkees did in 1974. She took measurements from 1990 for the carcinogen in question, and opined that his exposure in 1974 was greater. And that point, that his exposure was greater, is backed up again by carry on 2014 and by the Hanley 2012 study. Both of those two studies make the point that over time, exposures went down. So the exposures in 1974 were much higher than what they were in 1990 when they were finally measured. Let me ask you this. Let's concede this is a difficult, relatively close question. Explain to me why you think Judge Sinatra abused his discretion in the ruling he made. Well, in Daubert, we look for reliability. And if an expert squarely bases her opinion on a published peer-reviewed study, then that's the epitome of what we want to see under Daubert. That can't be an abuse of discretion. Many of the arguments that my adversary is bringing up go to the weight of the evidence. Those are things for cross-examination. Those don't affect her methodology. Her methodology is absolutely solid. If she doesn't go any further than what a published peer-reviewed study says, then that's what we look for, for reliability. And with respect to the issue of quantification of exposure, again, she relies on the data that was in the government reports. This is a scam. Thank you. Okay. Thank you. I believe my time's expired. Judge Cabranes, we can't hear you. Thanks. The old mute button. Thank you. Do my colleagues have any further questions for counsel, for Sarkis? No. All right. In that case, we will reserve decision in this case. We appreciate the counsel on both sides, which was very good. And I'll ask the clerk to adjourn court. First sentence adjourned.